UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN BASSETT,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF BUTTE, et al.,<br><br>    Defendants. | No. 2:21-cv-01025-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

Presently before the Court is Defendants County of Butte ("County"), Butte County Sheriff's Office ("BCSO"), and Sheriff Kory L. Honea's (collectively, "County Defendants") Motion for Partial Summary Judgment, ECF No. 19, which Plaintiff Ivan Bassett ("Plaintiff") opposes.[1]  ECF Nos. 19-1 ("County Defs.' Mem."), 23 ("Pl.'s Opp'n"), 24.  For the following reasons, County Defendants' Motion is GRANTED.[2]

///
///
///
///

---

[1] Defendant California Forensic Medical Group ("CFMG") is not a party to the present Motion.

[2] Because oral argument would not have been of material assistance, the Court declined to set this matter for a hearing and decides this Motion on the briefs.  E.D. Local Rule 230(g).

1

# BACKGROUND[3]

Plaintiff completed a state prison term in November 2017, after which the Butte County District Attorney initiated proceedings to have him civilly committed. During litigation of the civil commitment proceeding, Plaintiff was housed in the Butte County Jail (the "Jail") for approximately three years. Initially, Plaintiff was housed in an area of the Jail known as B Pod. Plaintiff states that he was a frequent target for harassment by other inmates and specifically that he had some sort of confrontation with inmate Orrin Colbourn ("Colbourn") at some point during his time in B Pod. Plaintiff was eventually transferred to A Pod and was placed in a cell adjacent to Colbourn, who had been moved there sometime prior to Plaintiff's transfer.

Colbourn occasionally harassed and threatened Plaintiff and other inmates, and those threats often revolved around Colbourn's demands that other inmates give him extra coffee from the commissary. Although Plaintiff had given Colbourn some coffee in the past, he had not done so in weeks or months after he was reprimanded, which only seemed to anger Colbourn and led to more harassment.

On the evening of July 28, 2020, Plaintiff was walking alone in the central common area of A Pod, known as the day room, for exercise. Plaintiff had heard Colbourn, who was housed in cell A84, kicking on his cell door for some time. Kourtney Velazquez ("Velazquez"), the deputy assigned to the observation and control tower, came on shift at 7:00 p.m. and she also heard Colbourn kicking at his cell door at that time. In her declaration, Velazquez states that she "had been briefed at the start of [her] shift that Mr. Colbourn had been kicking at the door for a significant period of time, had not been responsive to efforts to correct this behavior, and that the door had remained secure." Velazquez Decl., ECF No. 19-8, ¶ 5.

///

---

[3] Unless otherwise noted, the following recitation of undisputed facts is taken, primarily verbatim, from County Defendants' Separate Statement of Undisputed Material Facts and Plaintiff's response thereto. ECF Nos. 19-2, 23-2.

2

However, Velazquez "did not believe there was a risk that [Colbourn] would thereby defeat the locking mechanism and gain access to the day room[,]" stating that in her experience at the Jail, "inmates kicking at their doors as a means of being disruptive or seeking attention was a relatively common occurrence[,] . . . [that] the heavy duty doors and locks in A-Pod were capable of withstanding such forces, and [she] had never heard of an inmate successfully forcing open a cell door in that manner." Id. ¶ 8.  The cell doors in A Pod are secured with high security locks which are controlled by a correctional officer in the observation and control tower by means of a remote electronic system.  Though floor deputies have access to a physical key, if necessary, the only person with the ability to operate the electronic control system is the tower deputy, who at the time of the event in question was Velazquez.

Suddenly, at approximately 7:30 p.m., Colbourn's cell door swung open, and Colbourn ran out and assaulted Plaintiff.  Velazquez immediately notified her sergeant who in turn notified floor correctional staff.  The two inmates engaged in a physical struggle during which Plaintiff was knocked to the ground and pushed up against a metal railing.  Plaintiff used his cane to defend himself.  Colbourn eventually ran back into his cell, which was where he was by the time correctional officers, whose response was briefly delayed because they were engaging in meal service, entered the day room. According to County Defendants, when the officers arrived, Plaintiff was evaluated by medical staff and received medical treatment for minor injuries, but Plaintiff says that there were no medical personnel at the scene and no medical evaluation or treatment was provided at that time.  Plaintiff has since claimed that he suffered more serious injuries resulting from the incident.

///
///
///
///
///

It is undisputed that no floor officer physically unlocked Colbourn's cell door with a key. However, Plaintiff claims that based on his review of the video footage, the cell door simply opened with ease and without any evidence of being violently kicked open, and thus Velazquez (or some other unnamed deputy) must have intentionally and negligently unlocked Colbourn's cell door, which allowed for the attack to occur.[4] For her part, Velazquez avers that she did not utilize her touchscreen to unlock the door to Colbourn's cell at the time of the incident.

BCSO conducted its own investigation and concluded that "[t]his was not an intentional act nor a case of deliberate indifference, [but that] this was a result of [inmate] Colbourn defeating the door's locking mechanism by force." See Ex. B, Hovey Decl., ECF No. 19-6, at 8–9. The investigating officer, Captain Daryl Hovey ("Hovey"), who serves as Commander of the Jail, explained in a memorandum that Velazquez's version was confirmed by reviewing logs generated by the electronic security system. See id. at 8 ("The log indicates that cell A84 was not opened by the control system."). In his declaration, Hovey also explained as follows:

> The cell doors within the maximum security wing, which includes A Pod, are secured with heavy duty "double throw" locks manufactured by Folger Adam Detention Equipment. These locks feature a deadbolt which extends from the door frame into a door made of heavy duty steel. They are locked by default and are generally unlocked in the ordinary course of business by the tower deputy utilizing the jail's remote electronic control system. When unlocked, they automatically cycle back to the locked position after a short time.

Hovey Decl., ECF No. 19-6, ¶ 3. Additionally, BCSO Lieutenant Brian Meyer and facility maintenance worker Bryan McReynolds physically inspected the lock on Colbourn's cell door and found that it had been damaged such that the mechanism had become loose in its housing, allowing it to be defeated by the repeated force of Colbourn kicking at this door. See Exs. B–C, Washington Decl., ECF No. 19-3, ¶ 4 (videos of the inspection of cell A84's lock mechanism); Meyer Decl., ECF No. 19-7, ¶¶ 2–3.

---

[4] No individual deputy is named as a defendant in this action.

4

**STANDARD**

The Federal Rules of Civil Procedure[5] provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment.  See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378–79 (C.D. Cal. 1995).  The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288–89 (1968).

///
///
///

---

[5] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

5

1    In attempting to establish the existence or non-existence of a genuine factual
2 dispute, the party must support its assertion by "citing to particular parts of materials in
3 the record, including depositions, documents, electronically stored information,
4 affidavits[,] or declarations . . . or other materials; or showing that the materials cited do
5 not establish the absence or presence of a genuine dispute, or that an adverse party
6 cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The
7 opposing party must demonstrate that the fact in contention is material, i.e., a fact that
8 might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby,
9 Inc., 477 U.S. 242, 248, 251–52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and
10 Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992).  The opposing party must also
11 demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is
12 such that a reasonable jury could return a verdict for the nonmoving party."  Anderson,
13 477 U.S. at 248.  In other words, the judge needs to answer the preliminary question
14 before the evidence is left to the jury of "not whether there is literally no evidence, but
15 whether there is any upon which a jury could properly proceed to find a verdict for the
16 party producing it, upon whom the onus of proof is imposed."  Anderson, 477 U.S. at 251
17 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original).
18 As the Supreme Court explained, "[w]hen the moving party has carried its burden under
19 Rule [56(a)], its opponent must do more than simply show that there is some
20 metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586.  Therefore,
21 "[w]here the record taken as a whole could not lead a rational trier of fact to find for the
22 non-moving party, there is no 'genuine issue for trial.'"  Id. at 587.
23    In resolving a summary judgment motion, the evidence of the opposing party is to
24 be believed, and all reasonable inferences that may be drawn from the facts placed
25 before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at
26 255.
27 ///
28 ///

6

Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

In the operative Complaint, Plaintiff asserts the following causes of action: (1) Negligent Supervision, Training, Hiring, and Retention; (2) Monell Claims; (3) Deliberate Indifference by Individual Correctional Officers; (4) Denial of Adequate Medical Treatment; (5) Negligence; and (6) Violation of California's Elder Abuse and Dependent Adult Civil Protection Act ("Elder Abuse Act"), California Welfare and Institutions Code §§ 15600 et seq. See generally Compl., ECF No. 1 ("Compl."). County Defendants only move for summary judgment on the First, Second, Third, and Sixth Causes of Action, each of which the Court will address in turn.[6]

### A. Third Cause of Action: Deliberate indifference by individual correctional officers

#### 1. Plaintiff has failed to identify any correctional officer defendants.

Plaintiff seeks to recover from ten John Doe correctional officers for their deliberate indifference to his health and safety. The problem for Plaintiff at this juncture is that he has not identified and substituted any proper party for the Doe defendants, despite having had the benefit of discovery, plenty of time to do so, and apparently having actually identified at least some of those officers. See Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980) ("As a general rule, the use of "John Doe" to identify a defendant is not favored. However, situations arise, such as the present, where the identity of alleged defendants will not be known prior to the filing of a complaint.

---

[6] County Defendants chose not to pursue summary relief as to the negligence cause of action, and the claim for inadequate medical treatment is directed only at CFMG.

1  In such circumstances, the plaintiff should be given an opportunity through discovery to
2  identify the unknown defendants, unless it is clear that discovery would not uncover the
3  identities, or that the complaint would be dismissed on other grounds.") (internal citations
4  omitted).  Plaintiff cannot succeed on a federal claim against a fictional party.  See
5  Birhanzl v. Doe, No. 06-CV-116-BR, 2007 WL 1598173, at *3 (D. Or. 2007) (granting
6  summary judgment on claims alleged against a Doe defendant when the plaintiff had
7  conducted discovery, had an opportunity to identify her, and failed to do so).
8  Defendants' Motion is thus GRANTED as to this cause of action because there are no
9  named individual defendants.

> **2.  Even if Plaintiff could proceed on this third claim, however, Defendants have shown that they are entitled to judgment as a matter of law.**

12  For an inmate to bring a valid claim against a prison official for deliberate
13  indifference in violation of the Eighth Amendment to the United States Constitution, there
14  are two requirements.  "First, an inmate must objectively show that he was deprived of
15  something 'sufficiently serious.'"  Foster v. Runnels, 554 F.3d 807, 812 (9th Cir. 2009))
16  (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  "A deprivation is sufficiently
17  serious when the prison official's act or omission results in the denial of the minimal
18  civilized measure of life's necessities."  Id. (internal quotation marks omitted).  Second,
19  "[t]he inmate must then make a subjective showing that the deprivation occurred with
20  deliberate indifference to the inmate's health or safety."  Id.  To satisfy this requirement,
21  an inmate must show that the prison official "kn[ew] of and disregard[ed] an excessive
22  risk to inmate health or safety[.]"  Farmer, 511 U.S. at 837, 842 (stating that "an Eighth
23  Amendment claimant need not show that a prison official acted or failed to act believing
24  that harm actually would befall an inmate; it is enough that the official acted or failed to
25  act despite his knowledge of a substantial risk of serious harm.").
26  ///
27  ///
28  ///

Under this cause of action, Plaintiff alleges in the Complaint that unnamed correctional officers "intentionally and negligently unlocked cell door A-84 and allowed Orrin Colbourn to attack [Plaintiff] in an area of the jail where he was supposed to be by himself" and as a result, this "deliberate indifference to inmate safety . . . was a proximate cause of the assault inflicted upon" Plaintiff.  Compl., ¶ 29.  County Defendants, however, argue that the undisputed facts show that there was no deliberate indifference.  See County Defs.' Mem., at 9–11.  Velazquez states in her declaration that she "did not utilize [her] touchscreen to unlock the door to cell A84 at or about the time of" the incident while working as the tower deputy.  Velazquez Decl., ECF No. 19-8, ¶ 7.  She also states that she was aware that Colbourn "had been kicking at his cell door," but she "did not believe there was a risk that he would thereby defeat the locking mechanism and gain access to the day room."  Id. ¶ 8 ("In my experience the heavy duty doors and locks in A-Pod were capable of withstanding such forces, and I had never heard of an inmate successfully forcing open a cell door in that manner.").

Additionally, Captain Hovey provides the following statements in his declaration:

> Throughout my career it has been my experience that the cell door locks in the maximum security area of the jail have been very secure and have withstood all manner of attempts to defeat them including repeated physical force.  Until the incident involved in this case I had never known one of these locks to fail in this manner.

Hovey Decl., ECF No. 19-6, ¶ 3.  It is also undisputed that no floor officer physically unlocked the cell door with a key.  See Pl.'s Reply County Defs.' Statement of Undisputed Facts, ECF No. 23-2, ¶ 23.  Nor did "the electronic monitoring system logs . . . contain any evidence that Deputy Velazquez had unlocked the door."  Hovey Decl., ¶ 4.

///

///

///

///

9

Finally, it is undisputed that a physical inspection of cell A84's lock revealed "that the mechanism had become loose in its housing, allowing it to be defeated by the repeated force of Mr. Colbourn kicking at his door." Pl.'s Reply County Defs.' Statement of Undisputed Facts, ¶ 26; see also Exs. B–C, Washington Decl., ECF No. 19-3, ¶ 4 (videos of the inspection of cell A84's lock mechanism); Meyer Decl., ECF No. 19-7, ¶ 2 (finding "the locking mechanism of cell door A84 . . . to have been damaged such that it was loose in its housing" upon inspection).

In opposition, Plaintiff contends only that the videographic evidence contradicts Velazquez and other correctional officers' declarations and "at the very least, raises a question of fact as to whether Mr. Colbourn's door was intentionally opened by one of the correctional officers." See Pl.'s Opp'n, at 7–8; see also Ex. A, Washington Decl., ECF No. 19-3, ¶ 3 (video recording dated July 28, 2020); Ex. E, Marquez Decl., ECF No. 23-2, ¶ 14 (same). According to Plaintiff,

> based on the video footage it is absolutely clear that the [C]ounty [D]efendants unlocked Mr. Colbourn's door as opposed to him kicking the door and defeating the locking mechanism. As mentioned above, this is supported by the fact that: 1) At 10:27:24 p.m. Mr. Colbourn's cell door opens without any indication of being violently kicked open; 2) At 10:29:16 p.m. it appears that after Mr. Colbourn returns to his cell, one of the responding officers (a female) tries to open the door but it is locked and 3) for the rest of the time while the correctional officers are at the scene of the incident, no one bothers to secure Mr. Colbourn, despite defendants' claim that the locking mechanism was defeated.
>
> It is plaintiff's position that if the locking mechanism had in-fact been defeated, the responding officers would have immediately secured Mr. Colbourn to a cell that actually locks. Instead, the video shows that the five (5) responding officers had zero concern about Mr. Colbourn posing any further threat. In-fact, all five (5) officers left the scene at the same time without a single one of them securing Mr. Colbourn's cell.

Pl.'s Opp'n at 7.

///

///

///

1                Plaintiff thus relies entirely on his own interpretation of the video evidence to try to
2    argue that the Colbourn did not breach the door and that it must have been opened by
3    an officer.  However, nothing in the video is inconsistent with the evidence indicating that
4    the door was kicked open as opposed to being opened remotely.  In fact, the video is
5    entirely consistent with Defendants' evidence.  Plaintiff's speculation as to what he
6    believes the video shows is thus insufficient to create a triable issue of fact regarding
7    how the cell door was opened.
8                In addition, the undisputed evidence shows that officers were not deliberately
9    indifferent to the possibility that Colbourn might be able to breach his cell door in the first
10   place.  Although Velazquez was aware that Colbourn was repeatedly kicking the door,
11   both she and Hovey state in their declarations that they have never encountered a
12   situation where an inmate's kicking or other physical force would damage the cell door's
13   lock and allow that inmate to escape.  In light of these statements and Plaintiff's failure to
14   present evidence to the contrary, the Court finds that the correctional officers were not
15   deliberately indifferent to Plaintiff's health and safety.
16               In sum, Plaintiff fails to provide any evidence in support of his theory that
17   correctional officers intentionally or negligently unlocked Colbourn's cell door or that the
18   correctional officers knew of and disregarded an excessive risk to Plaintiff's safety.
19   Accordingly, summary judgment is GRANTED on the Third Cause of Action on this basis
20   as well.
21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

### B.   Second Cause of Action: Monell Claims

County Defendants next move for judgment as to Plaintiffs' Monell claims, which of course fail given the lack of an underlying constitutional violation. Even if Plaintiff could make such a showing, however, he still offers insufficient evidence to succeed under Monell.[7] "[M]unicipalities, including counties and their sheriff's departments, can only be liable . . . if an unconstitutional action 'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" Rivera v. Cnty. of L.A., 745 F.3d 384, 389 (9th Cir. 2014) (quoting Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690 (1978)). Here, Plaintiff alleges that County Defendants "had a policy and practice of neglecting inmate health and safety[] [a]s well as failing to adequately and proactively train and supervise the correctional officers at the [J]ail." Compl., ¶ 25.

County Defendants argue that Plaintiff has "not identified any policies alleged to have contributed to [his] other claims of failure to prevent the assault in real time." See County Defs.' Mem., at 12–13. Plaintiff counters that "there have been previous actions commenced in this court against the defendants based on the very same claim of defendants failing to provide adequate security and safety for the inmates at the" Jail. See Pl.'s Opp'n, at 9–10 (citing Beaver v. County of Butte, No. 2:20-cv-00279-WBS-DB (E.D. Cal.) ("Beaver")). In Beaver, Plaintiff asserts that "similar allegations were made against the County after two inmates were brutally and viciously beaten by a fellow inmate in the middle of the night because the watch tower deputy failed to provide adequate supervision." Id. (stating that the "incident was also captured on video surveillance."). However, Beaver is not sufficiently similar to serve as a basis for Monell liability here.

///

---

[7] Plaintiff's failure to name any individual defendants as to the underlying constitutional violations is not fatal to his Monell cause of action. See Fairley v. Luman, 281 F.3d 913, 917 (9th Cir. 2002) ("If a plaintiff establishes he suffered a constitutional injury by the City, the fact that individual officers are exonerated is immaterial to liability under § 1983.").

Based on Plaintiff's descriptions of both cases, <u>Beaver</u> dealt with inadequate supervision which resulted in an inmate being assaulted whereas the issue in this case is whether correctional officers unlocked Colbourn's cell door "for the specific purpose of assaulting" Plaintiff.  <u>See</u> Compl., ¶ 17.

Ultimately, Plaintiff does not identify any specific policy, practice, or custom that led to his alleged injuries.  Therefore, summary judgment on this cause of action is GRANTED as to County Defendants.

### C. First Cause of Action: Negligent Supervision, Training, Hiring, and Retention

"Under California law, an employer may be held directly liable for the behavior of an unfit employee where the employer was negligent in the hiring, training, supervising, or retaining of that employee."  <u>Trout v. Cnty. of Madera</u>, No. 1:22-cv-00867-ADA-SAB, 2023 WL 3994932, at *28 (E.D. Cal. June 14, 2023) (citing <u>Delfino v. Agilent Techs., Inc.</u>, 145 Cal. App. 4th 790, 815 (2006)).  "To establish liability, a plaintiff must demonstrate the familiar elements of negligence:  duty, breach, proximate causation, and damages."  <u>Dent v. Nat'l Football League</u>, 902 F.3d 1109, 1122 (9th Cir. 2018) (citing <u>Phillips v. TLC Plumbing, Inc.</u>, 172 Cal. App. 4th 1133, 1139 (2009)).  "Negligence liability will be imposed upon the employer if it 'knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes.'" <u>Delfino</u>, 145 Cal. App. 4th at 815 (citation omitted).  Similarly, "to state a cause of action for negligent training or supervision, a plaintiff must allege facts to show that the defendant was on notice that the employee was likely to cause harm before the harm occurs."  <u>Trout</u>, 2023 WL 3994932, at *28.

///
///
///
///
///

In support of this cause of action, Plaintiff points to the Jail Information Handbook which "establish[es] rules to maintain order and efficiency within the correctional facility, and for inmate safety and security," and lists, among other things, "[t]ampering doors, locks, [and] security systems" as serious violations.  See Pl.'s Opp'n, at 10; Ex. C, Marquez Decl., ECF No. 23-1, at 58–59.  However, a provision found in a handbook Plaintiff concedes contains rules for inmates, see Pl.'s Opp'n, at 7, is insufficient to demonstrate that County Defendants knew or were on notice that their employees were likely to cause harm.  Plaintiff's contention that Velazquez's failure to act when she heard Colbourn kicking the cell door "raises [] questions as to her hiring, training, retention and supervision[,]" is both speculative and conclusory.  Id. at 10.  Therefore, summary judgment is GRANTED on this cause of action as to County Defendants.

### D. Sixth Cause of Action:  Elder Abuse

The Sixth Cause of Action is based on the same facts and theories set forth above except with the additional allegation that Plaintiff was 68 years old at the time of his assault.  See Compl., ¶ 40.  Under the Elder Abuse Act, "a plaintiff must demonstrate that a defendant:  (1) subjected an elder to statutorily-defined physical abuse, neglect, or financial abuse; and (2) acted with recklessness, malice, oppression, or fraud in the commission of the abuse." Davenport v. Litton Loan Serv., LP, 725 F. Supp. 2d 862, 879 (N.D. Cal. 2010); see also Cal. Welf. & Inst. Code § 15610.27 (defining an "elder" as "any person residing in this state, 65 years of age or older.").  "Recklessness involves deliberate disregard of the high degree of probability that an injury will occur and rises to the level of a conscious choice of a course of action with knowledge of the serious danger to others involved in it." Carter v. Prime Healthcare Paradise Valley LLC, 198 Cal. App. 4th 396, 405 (2011) (internal quotation marks and alterations omitted).

///
///
///
///

The Court finds that Plaintiff's elder abuse claim fails for the same reasons as his deliberate indifference claim.  See supra Part A; George v. Sonoma Cnty. Sheriff's Dep't, 732 F. Supp. 2d 922, 943 (N.D. Cal. 2010) (applying deliberate indifference analysis to Elder Abuse Act claim).  Therefore, summary judgment is GRANTED as to County Defendants on this cause of action as well.

**CONCLUSION**

For the foregoing reasons, County Defendants' Motion for Partial Summary Judgment, ECF No. 19, is GRANTED.  Summary judgment is granted in favor of County Defendants on the First, Second, Third, and Sixth Causes of Action only.  Not later than thirty (30) days from the issuance of this Memorandum and Order, the parties shall file a Joint Notice of Trial Readiness as to Plaintiff's two remaining claims in accordance with this Court's Pretrial Scheduling Order.  See ECF No. 4.

IT IS SO ORDERED.

Dated:  February 29, 2024

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE